[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION de FINANCIAL ORDERS
The plaintiff wife, 47, and the defendant husband, 52, married on August 27, 1982 at New York, New York. Two children were born CT Page 94-M to the parties, Katherine Meyerson Serrell d.o.b. February 22, 1985 and Tybie Elizabeth Serrell d.o.b. March 21, 1988. This action for dissolution was commenced by complaint dated April 25, 1994. The parties disputed custody. The case was sent to the regional calendar in Middletown. On December 15, 1995, the parties reached a written stipulation settling the custody and visitation issue. A hearing then proceeded before the court (Steinberg, J.) at which time an additional oral stipulation was recited for the record concerning telephone contact with the children, use of a fax machine, and the plaintiff's voice mail. Each party was canvassed, the court entered judgment dissolving the marriage, found the stipulation to be fair and equitable, and entered it as an order as part of the judgment. The file was then ordered returned to the Stamford J.D. with the pendente lite financial orders continued in full force and effect.
Trial of the financial issues began on September 17, 1996 and concluded on September 24, 1996, the fifth day of trial. The defendant represented himself pro se.
The plaintiff graduated from Antioch College in 1967 with a B.A. degree, received a Master's in Education from the University of Maryland in 1973, and Dr. in Education at Georgia State University in 1981. The plaintiff operated a small book publishing company with a partner until she gave birth to Katherine. After CT Page 94-N two years as homemaker and mother, she returned to part time employment in 1985 or 1986 as a real estate agent.
The defendant was a vice president of Drexel, Burnham 
Lambert, a brokerage house, when married to the plaintiff. He held a Series 8 license, allowing him to be a branch manager and to deal with a variety of securities products on a wholesale level as well as retail. He dealt primarily with other brokers. He remained in this position until 1988, during which years he was obliged to travel very extensively. He described how he trained 1,500 brokers in handling tax advantaged investments i.e. limited partnerships during these years. From 1982 when his income was $64,000.00[1] he accelerated to averaging over $180,000.00 from 1983 through 1987. In 1989 he was unemployed. In 1990 and 1991 he worked a year each for a mortgage company and then another capital management company. His income recovered in 1993 to $87,000.00, a high watermark for he has a checkered work history since, obtaining employment from various temporary assignments. His primary source of money from 1994 through 1996 was a series of loans from his father who died on January 26, 1996. The defendant testified that the estate has since forgiven the loans. In 1993 J. Squared Capitol Corp. was formed in which the defendant has a 50% interest. In the first six months of 1996 the defendant earned about $6,500.00 from two temporary agencies.
The defendant purchased a home in Darien in May, 1984 for CT Page 94-O $130,000.00 (Plaintiff's Exhibit #13) which was sold in February, 1987 for $250,000.00. The Westport home at 35 Sturges Highway was purchased on July 15, 1985 (Plaintiff's Exhibit #14) for $482,000.00. The plaintiff, who then held title, sold it on April 18, 1995 for $591,806.31 total proceeds (Plaintiff's Exhibit #5). After disbursements, there remained $20,000.00 held by the closing attorney and $12,013.45 held by the plaintiff's attorney (Plaintiff's Exhibit #6).
As of August 26, 1996, the defendant itemized a total of $133,127.50 spent on "legal expenses" (Plaintiff's Exhibit #9). The plaintiff had paid to her attorneys $50,476.91 per her attorney's statement dated September 18, 1996 (Plaintiff's Exhibit #11). By motion dated December 13, 1996 the attorney for the children requests an additional award of $11,534.20 for services incurred since entry of judgment.
The prospects for a rollover of the real estate profits appear dim, with the time remaining running short. An amended 1995 return will create an alternative capital gain tax of $52,660.00 (Plaintiff's Exhibit #15). During 1996 through August the plaintiff had earned commissions of $114,694.95 (Plaintiff's Exhibit #4). After expenses and taxes the court finds that this translates to net disposable income of about $6,000.00 monthly. It is indeed fortunate for the plaintiff that she has these earning CT Page 94-P skills for the expenses incurred to defend the defendant's unremitting quixotic efforts in this case have dissipated the family's assets.
The plaintiff currently is able to live in a home owned by her parents for which no rent had been paid for several months immediately prior to this trial.
The defendant has neglected his earning capacity, his employment skills and experience in order to concentrate on the litigation. In finding the defendant's net disposable earnings, the court will increase the sum based on earning capacity, Millerv. Miller, 181 Conn. 610 (1980).
In addition to the current litigation, the defendant engaged his first wife in a custody dispute that greatly strained this marriage. The defendant also attributes his conduct toward the plaintiff as emanating from his bouts with depression. In any event, the court has concluded that the reasons for the marriage breakdown must be primarily borne by the defendant. The parties separated in April, 1994.
As of August 3, 1995 the court found an arrears in child support to be $9,560.00. On his August 26, 1996 financial affidavit, as monthly expenses the defendant lists "child support CT Page 94-Q
A. Sean Serrell $350.00 (court ordered)
B. Katie and Tybie 693.00 (court ordered)
 C. Arrearage (for Katie Tybie) 174.00 (court ordered)"
Having reviewed the evidence in light of the statutory criteria, in particular §§ 46b-81 and 46b-82, the following financial orders are entered as part of the final judgment.
1. No periodic alimony is awarded to either party.
2. Child support is ordered in the amount of $150.00 weekly based on the net disposable incomes found supra. It is based on the Connecticut child support and arrearage guidelines.
3. The arrears of child support pendente lite is preserved for collection, currently to be paid at the rate of $10.00 weekly.
4. A wage withholding order is entered pursuant to applicable statute.
5. The plaintiff and the defendant shall each insure the CT Page 94-R children via any available group medical plan if, as and when provided by any employer of either party. Uninsured medical expenses necessary for the physical well-being of either child shall be borne equally by the parties for so long as a legal duty to support exists for said child.
6. The child support arrears accrued on the pendente lite order is found to be $12,240.00 as of September 13, 1996 and is subject to update, credits, and audit.
7. The escrows held by the closing attorney and the plaintiff's attorney respectively are awarded to the plaintiff as her sole property and shall be released to her after $5,000.00 is deducted and paid over to the attorney for the children, her motions as supplemented being granted. The defendant shall pay $5,000.00 to the minors' counsel on or before January 21, 1998.
8. Each party shall retain all tangible personal property as now possessed as that party's sole property.
9. The defendant shall hold the plaintiff harmless and indemnified for all claims emanating from the defendant's brother Donald, his father's estate, or any other relative, including the $20,000.00 plus interest loan described in file #FST CV95014 51 99 in suit brought to this Stamford J.D. CT Page 94-S
10. The defendant shall hold the plaintiff harmless and indemnified from all his liabilities, whether listed or not on his financial affidavit.
11. The plaintiff shall hold the defendant harmless and indemnified from all her liabilities, whether listed or not on her financial affidavit.
12. All remaining assets now standing in the name of either party shall remain that party's assets solely.
13. The court makes no order regarding any tax liability past, present, inchoate, or future.
14. Each party shall be solely responsible for that party's litigation expenses.
Counsel for the plaintiff is requested to prepare the judgment file, provide a copy to the defendant, and submit the draft to the clerk's office for review.
HARRIGAN, J.